**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **BILAL MUHAMMAD,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-19-CV-367-KC** |
| | § | |
| **RICHARD WILES, Sheriff,** *et al*., | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bilal Muhammad, a pretrial detainee at the El Paso County Jail Annex (EPCJA) in El Paso County, Texas, brings a civil rights complaint pursuant to 42 U.S.C. § 1983. Pl.'s Compl., ECF No. 1-4, pp. 1–ECF No. 1-9, p. 24. He asserts Defendants continue to violate his rights by denying him a particularized religious diet. He seeks injunctive relief and monetary damages. For the reasons discussed below, the Court will dismiss Muhammad's complaint. The Court will additionally award Muhammad a strike.

## BACKGROUND AND PROCEDURAL HISTORY

On December 30, 2015, police responded to reports of shots fired at a residence where Muhammad rented a room in El Paso, Texas. They arrested Muhammad after they ordered him out of the building and he laid down an assault rifle and a pistol. They discovered the body of Lane William Wiscomb inside. They determined Wiscomb died from gunshot wounds.

Muhammad was charged with murder and booked into the El Paso County Detention Center. Muhammad was indicted on March 9, 2016, for murder, in violation of Texas Penal Code § 19.02, under cause number 20160D01015 in the 168th Judicial District Court of El Paso County. Muhammad has remained in the custody of Defendant Sheriff Richard Wiles at the EPCJA for more than four years awaiting his trial.

On February 8, 2019, Muhammad filed a civil rights lawsuit pursuant to 42 U.S.C. § 1983 in cause number EP-19-CV-KC. Muhammad claimed he followed the Laws of Kashruth and his faith required him to eat kosher foods. He alleged Wiles denied him his "right" to a kosher diet. He asserted this right arose from (1) the First Amendment's Free Exercise Clause, (2) the Fourteenth Amendment's Equal Protection Clause, and (3) the Religious Land Use and Institutionalized Persons Act (RLUPA) , 42 U.S.C. § 2000cc–1 *et seq*. He sought injunctive relief.

The Court determined Muhammad had not exhausted his administrative remedies. It accordingly denied Muhammad's motion for a temporary restraining order and preliminary injunction on July 16, 2019.

Muhammad's appeal is pending before the Fifth Circuit Court of Appeals in case number 19-50514.

Muhammad now claims multiple Defendants continue to violate his rights under RLUPA and the First Amendment. Pl.'s Compl., ECF No. 1-4, p. 14. Specifically, he asserts Defendants do not provide "standard kosher meals that follow orthodox-kashrut . . . laws" which meet his religious obligations. *Id*. He concedes Defendants do provide an "El Paso, Texas kosher menu" for EPCJA prisoners, but asserts these meals do not meet his religious requirements. *See id*., ECF No. 1-5, pp. 22–23 (El Paso County . . . implement[ed] . . . the policy . . . of 'El Paso Texas, kosher menu' . . .") ; *id*, ECF No. 1-10, Ex. 1 (Kosher Menu), pp. 1–2; *id*., ECF No. 1-11, Ex. 2, pp. 21, 23 (Amend. No. 1 to Operating Agreement—Food Services). He contends Defendants have "placed a substantial burden on the free exercise of his religious beliefs [without] a compelling government interest." *Id*. at ECF No. 1-4, p. 14. He further contends Defendants have "established a

state-endorsed religion . . . to crush [his] religious beliefs . . . to either make him . . . convert or . . . suffer . . . from eating the unhealthy diet." *Id*. at p. 25–26. He argues Defendants have not "heeded . . . the Religious Land Use + Institutionalized Persons Act (RLUIPA) which . . . provides greater protection than the" First Amendment. *Id*. at 28. He maintains "the gravamen" of his complaint is Defendants have "denied him the right to freely practice his religion . . ." *Id*., ECF No. 1-5, p. 22. He claims he has now exhausted his administrative remedies. *Id.*, ECF No. 1-4, p. 13. He asks the Court to intervene in his behalf and order Defendants to provide "nutritionally sufficient orthodox kosher meals that do not offend his religious beliefs." *Id*., ECF No. 1-6, p. 2. He also asks for compensation in the amount of $10,000 per day from February 1, 2019 to the date the Court enters a final judgment giving him relief. *Id*., ECF No. 1-9, p. 7.

### TEMPORARY RESTRAINING ORDER / PRELIMINARY INJUNCTION

A court may grant a temporary restraining order or preliminary injunction under Federal Rule of Civil Procedure 65 to prevent an irreparable injury which may result before a dispositive trial. *See Shanks v. City of Dallas, Texas*, 752 F.2d 1092, 1096 (5th Cir. 1985) ("A preliminary injunction is typically granted during the pendency of a lawsuit to prevent irreparable injury that may result before a final decision on the merits."). Rule 65 is designed to protect the status quo of the parties or the evidence the movant will need to litigate his claims at trial. *See Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) ("where a district court has determined that a meaningful decision on the merits would be impossible without an injunction, the district court may maintain the status quo and issue a preliminary injunction"). Granting or denying a temporary restraining order or preliminary injunction remains within the discretion of the trial court. *See Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984) ("The

decision to grant or deny a preliminary injunction lies within the discretion of the district court and may be reversed on appeal only by a showing of abuse of discretion.").

Because the relief Muhammad seeks—if granted—would presumably exceed the fourteen-day limit in Rule 65(b)(2), his "motion [is] in effect a motion for preliminary injunction." *Dixon v. Vanderbilt*, 122 F. App'x 694, 695 (5th Cir. 2004) (per curiam) (unpublished); *see also United States v. Holy Land Found. For Relief & Dev*., 445 F.3d 771, 789 (5th Cir. 2006) ("An ex parte order that purports to be of indefinite duration is a preliminary injunction rather than a temporary restraining order.").

To obtain a preliminary injunction, the applicant must first provide notice. Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party."). The applicant must then show he meets four prerequisites: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012) (citation omitted). Strict proof of each element is required before a temporary restraining order or preliminary injunction may issue. *See Plains Cotton Cooperative Ass'n of Lubbock, Texas v. Goodpasture Computer Services, Inc.*, 807 F.2d 1256, 1261 (5th Cir. 1987) ("[W]e have made it clear in our decisions that preliminary injunctions will be denied based on a failure to prove separately each of the four elements of the four prong test for obtaining the injunction."). A court will not grant relief unless the movant clearly carries the onerous burden of persuasion as to all of these elements. *See United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (5th Cir. 1983) ("The preliminary injunction is an extraordinary and drastic

remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites.") (quoting *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)) .

For the reasons discussed below, the Court finds that Muhammad has failed to carry his burden on any of the four prerequisites required to establish the need for a preliminary injunction.

**A.  Muhammad will not prevail on the merits**

**1.   The Religious Land Use and Institutionalized Persons Act (RLUIPA)**

Under the RLUIPA, a governmental entity may not impose a substantial burden on the religious exercise of an inmate unless the entity demonstrates the imposition of the burden is (1) in furtherance of a compelling governmental interest, and (2) the least restrictive means of furthering such compelling interest.  *McFaul v. Valenzuela*, 684 F.3d 564, 575 (5th Cir. 2012).

The term "religious exercise" means "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).   There is no question that keeping a kosher diet qualifies as a religious exercise for the practice of Judaism under RLUIPA's generous definition.  *Guzzi v. Thompson*, 470 F. Supp. 2d 17, 25 (D. Mass. 2007) (stating that the practice of "keeping kosher" constitutes a religious exercise for the Jewish faith).

The plaintiff carries the initial burden under RLUIPA to show that the challenged law, regulation, or practice substantially burdens the exercise of his religion.  *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004).   "[A] government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs."  *Id*. at 569–70.

Where a plaintiff proposes alternatives, the defendant's burden is not to show that it

considered alternatives but rather to demonstrate those alternatives are ineffective. *Ali v. Stephens*, 822 F.3d 776, 786 (5th Cir. 2016).

Once the plaintiff makes a showing that a government action creates a substantial burden on a religious exercise, the defendant bears the burden of proving the challenged regulation is the least restrictive means of furthering a compelling governmental interest. *Id.* If the defendant successfully demonstrates a compelling interest as applied to the particular inmate, it must also show that its policy is the least restrictive means of achieving that interest. *Holt v. Hobbs*, 574 U.S. 352, 864 (2015).

Courts must accord due deference to the experience and expertise of prison administrators. *Davis v. Davis*, 826 F.3d 258, 264 (5th Cir. 2016). Religious accommodations must never override other significant interests in maintaining order and safety, and the courts give deference to prison officials in establishing necessary regulations and procedures to maintain good order, security, and discipline. *Id*. at 264–65. As a result, costs, limited resources, and prison security are all compelling state interests under RLUIPA. *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

" 'The least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].' " *Id.* (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014). In other words, the defendant must show that it lacks other means of achieving its desired goal—other than through the challenged policy. *Id.* This may require a fact-intensive inquiry into the particular costs and risks that a requested exemption may entail. *Chance v. Texas Department of Criminal Justice*, 730 F.3d 404, 418 (5th Cir. 2013).

In addition, RLUIPA does not create a cause of action against defendants in their individual capacities. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 330-31 (5th Cir. 2009). The statute also does not create a claim for damages against defendants in their official capacities because such claims are barred by the Eleventh Amendment. *Id*. at 331. Thus, the only relief available under RLUIPA is prospective injunctive relief. RLUIPA, however, "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." *Ali v. Stephens*, 822 F.3d 776, 792 (5th Cir. 2016) (quoting *Garner v. Kennedy*, 713 F.3d 237, 245 (5th Cir. 2013) (quoting 42 U.S.C. § 2000cc–3(c))).

In *Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007), the Fifth Circuit discussed dietary claims in light of RLUIPA. The summary judgment evidence showed that the general food budget for the Texas Department of Criminal Justice (TDCJ) was inadequate to cover the increased cost of operating separate kosher kitchens or bringing in kosher meals from the outside. *Id*. at 118. It further showed taking money from the general food budget to provide kosher meals to some inmates would diminish TDCJ's ability to provide nutritionally adequate meals to all prisoners. *Id*. It also showed such a policy would breed resentment among other inmates, and there would be an increased demand by other religious groups for special diets which would exacerbate the budget issue. *Id*. After considering this evidence, the Fifth Circuit found that TDCJ's policy of *not* providing kosher meals to inmates was "related to maintaining good order and controlling costs and, as such, involve[d] compelling governmental interests." *Id*. at 125. It also found that the policy was the least restrictive means of maintaining good order and controlling costs. Accordingly, it concluded TDCJ was not required to provide kosher meals to inmates and the district court properly granted the defendants summary judgment on Baranowski's RLUIPA

claim. *Id.* at 126.

In response to pressure from various stakeholders, the Texas Board of Criminal Justice elected to ignore the added cost of providing kosher meals to inmates and established a kosher kitchen at the Stringfellow Unit. Consequently, in *Moussazadeh v. TDCJ*, 703 F.3d 781 (5th Cir. 2012), the Fifth Circuit found that kosher food was a "generally available benefit" within TDCJ and, therefore, the "denial of religiously sufficient food where it is a generally available benefit would constitute a substantial burden on the exercise of religion." *Id.* at 793.

In Mohammad's case, the "El Paso Texas, kosher menu" is a generally available benefit at the EPCJA. Pl.'s Compl., ECF No. 1-5, pp. 22–23; *id*, ECF No. 1-10, Ex. 1 (Kosher Menu), pp. 1–2; *id.*, ECF No. 1-11, Ex. 2, pp. 21, 23 (Amend. No. 1 to Operating Agreement—Food Services). Documents provided by Muhammad show El Paso County currently pays a food vendor $4.50 per kosher meal and between $1.10 and $1.32 per non-kosher meal for EPCJA prisoners. Pl.'s Compl., ECF No. 1-11, Ex. 2, p. 23. Muhammad argues, however, that the "El Paso, Texas kosher menu" does not meet his personal religious requirements. *Id.*, ECF No. 1-6, p. 23. Hence, he asks the Court to order Defendants to prepare kosher meals for him which meet his personal understanding of the religious requirements for kosher meals.

The Fifth Circuit has already ruled that prisons need not respond to particularized religious dietary requests in order to comply with the First Amendment. In *Kahey v. Jones*, 836 F.2d 948 (5th Cir. 1988), it held that the prison was not required to accommodate a Muslim inmate's requirements regarding the content and preparation of his food. *Id.* at 950–51. It reasoned that the prison had a "legitimate governmental interest in running a simplified prison food service rather than a full-scale restaurant." *Id.* at 950. It found that granting the inmate's request would

be expensive, would divert resources from other penological goals, and could result in the perception of favoritism. *Id*. at 951. It also found that there were simply no ready alternatives to satisfy the inmate's personal dietary requirements at a *de minimis* cost to the prison. *Id*.

As the Court noted above, under RLUIPA, costs, limited resources, and prison security are all compelling state interests. *Cutter*, 544 U.S. at 723. Defendants have a legitimate governmental interest in running a simplified prison food service rather than a full-scale restaurant. Granting Muhammad an individualized meal plan would presumably encourage others to request their own personal meal plans, would result in greater costs to the county, would impose an "unjustified burden on other institutionalized persons," and could "jeopardize the effective functioning" of the EPCJA. *Id*. at 726. Consequently, Defendants can demonstrate a compelling interest in refusing to provide an individualized diet to Muhammad in particular, and its policy of denying individualized meals to prisoners in general may be the least restrictive means of achieving its penological interest in the effective functioning of the EPCJA. Consequently, EPCJA should be "free to resist the imposition" of providing a special, individualized diet to Muhammad. *Id*.

### 2. First Amendment

The First Amendment provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const., amend. I. Prisoners retain the right to free exercise of religion under the First Amendment, subject to reasonable restrictions stemming from legitimate penological concerns. *DeMarco v. Davis*, 914 F.3d 383, 388-89 (5th Cir. 2019) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). In evaluating the reasonableness of a prison policy, a court should consider (1) the existence of a

valid, "rational connection" between the state action and the legitimate governmental interest set out to justify it; (2) the availability of alternative means to exercise that right; (3) the impact an accommodation will have on guards, other inmates, and the allocation of prison resources, and (4) the absence of alternatives that fully accommodate the prisoner's right at a *de minimis* cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 89–91 (1987).

"[T]he RLUIPA standard poses a far greater challenge than does *Turner* to prison regulations that impinge on inmates' free exercise of religion." *Freeman v. TDCJ*, 369 F.3d 854, 857 n.1 (5th Cir. 2004). Thus, a policy or practice which passes muster under RLUIPA will necessarily satisfy the requirements of the First Amendment. *Charles v. Frank*, 101 F. App'x 634 (7th Cir. 2004); *see also Jones v. Shabazz*, 352 F. App'x 910 (5th Cir. 2009) (noting that because TDCJ's policies regarding the structure of Muslim services represented the least restrictive means of advancing multiple compelling governmental interests and satisfied RLUIPA, the plaintiff could not make out a claim under the First Amendment).

As noted above, the EPCJA kosher food policy passes muster under RLUIPA and will necessarily satisfy the requirements of the First Amendment. Furthermore, the Fifth Circuit has consistently held that prison officials "need not respond to particularized religious dietary requests to comply with the First Amendment." *Baranowski*, 486 F.3d at 122; *see also Omran v. Prator*, 674 F. App'x 353, 355 (5th Cir.) (per curiam), *cert. denied*, 138 S. Ct. 74 (2017) (reaching the same conclusion).

### B. There is no substantial threat of irreparable harm

Muhammad concedes Defendants provide an "El Paso, Texas kosher menu" for EPCJA prisoners, but asserts these meals do not meet his religious requirements. Pl.'s Compl., ECF No.

1-5, pp. 22–23; *id*, ECF No. 1-10, Ex. 1 (Kosher Menu), pp. 1–2; *id*., ECF No. 1-11, Ex. 2, pp. 21, 23 (Amend. No. 1 to Operating Agreement—Food Services).   Presumably the EPCJA also offers other food items permitted by Jewish religious laws such as fruits, vegetables, beans, and rice. Hence, Muhammad can choose to eat a kosher diet while at the EPCJA.

Furthermore, other courts have found a prisoner's desire for a kosher diet does not present the type of "immediate and irreparable injury, loss, or damage" that merits a temporary restraining order.   *Schuh v. Mich. Dep't of Corr.*, 2010 U.S. Dist. LEXIS 96812, *7, 2010 WL 3648878 (W.D. Mich. July 26, 2010), citing *Daly v. Lappin*, 2006 U.S. Dist. LEXIS 16627, 2006 WL 468723 at *1 (S.D. Ill. Feb. 27, 2006) (denying prisoner's request for a TRO preventing the removal of his kosher diet because no immediate and irreparable harm would occur "before Defendants can be heard.").

Finally, for an injunction to issue, a "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."   *Holland Am. Ins. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (citation omitted).   An "actual injury" must be certain to occur. *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (per curiam).

In this case, Muhammad neither addresses nor clearly demonstrates that Defendants will cause him to suffer an actual injury if the Court denies his request for a temporary restraining order or preliminary injunction.   Muhammad only suggests he may become malnourished if he refuses to eat the food—including the kosher food—provided by Defendants.

**C.  The threatened injury does not outweigh the harm of an injunction**

"[I]n the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and

intractable problems of prison administration.' " *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)).

Muhammad has not clearly shown that his threatened injury outweighs the harm of an injunction.

### D.   An injunction would disserve the public interest

Federal courts "do not sit to supervise . . . prisons."   *Meachum v. Fano*, 427 U.S. 215, 228 (1976).   Indeed, the Supreme Court has instructed all courts to afford prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and institutional security."   *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).   *See also Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (noting that federal courts "are not to micromanage state prisons").   "[E]xcept in extreme circumstances," the "federal courts are reluctant to interfere" with matters of prison administration and management.   *Young v. Wainwright*, 449 F.2d 338, 339 (5th Cir. 1971).

The Court has no expertise in diets in general and kosher diets in particular.   It will not intervene in Muhammad's behalf and order Defendants to provide him with a particularized religious diet of kosher food—especially when by Muhammad's own admission Defendants already provide prisoners at the EPCJA with kosher meals.   Pl.'s Compl., ECF No. 1-5, pp. 22–23; *id*, ECF No. 1-10, Ex. 1 (Kosher Menu), pp. 1–2; *id*., ECF No. 1-11, Ex. 2, pp. 21, 23 (Amend. No. 1 to Operating Agreement—Food Services).

### E.  Conclusion

In sum, the balance of equities favors the exercise of restraint in granting a request for injunctive relief requiring judicial intervention in matters involving internal prison operations.

*See Brown v. Plata*, 131 S. Ct. 1910, 1943 (2011) ("Courts should presume that state officials are in a better position to gauge how best to preserve public safety and balance competing correctional and law enforcement concerns.").   In this case, Muhammad has not shown any extreme or extraordinary circumstances which require immediate judicial intervention.   The Court will deny him injunctive relief.

## JUDICIAL SCREENING OF PRISONER COMPLAINTS

Because Muhammad is a prisoner, his pleadings are subject to judicial screening under 28 U.S.C. § 1915A.   As part of the screening process, a court is directed to dismiss a complaint if it determines the pleading is frivolous, malicious or does not state a claim upon which relief may be granted.   28 U.S.C. § 1915A(b)(1) (2012); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).   This statute applies to all complaints regardless of whether the prison has paid the filing fee or is proceeding in forma pauperis.   *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998).

A complaint is frivolous if it "lacks an arguable basis in either law or fact."   *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   " 'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.' "   *Davis v. Scott*, 157 F.3d 1003,1005 (5th Cir. 1998) (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).   A claim is factually frivolous if the facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic' and 'delusional.' "   *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995) (quoting *Denton v. Hernandez*, 504 U.S. 25, 33-34 (1992)).

To determine whether a complaint fails to state a claim upon which relief may be granted, courts engage in the same analysis as when ruling on a motion for dismissal under Federal Rule of

Civil Procedure 12(b)(6). *Hale v. King*, 642 F.3d 492,498–99 (5th Cir. 2011). Rule 12(b)(6) allows a court to dismiss an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "While a complaint . . . does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235–236 (3d ed. 2004)). When evaluating a Rule 12(b)(6) motion, a court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). A court must accept as true all well-pleaded facts in the complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). But a court may disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "This

standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.' " *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (quoting *In re So. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).   This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Additionally, it is well-established that a court reviews *pro se* pleadings under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).   However, "[p]ro se status does not give plaintiffs a prerogative to file meritless claims." *Olstad v. Collier*, 205 F. App'x 308, 310 (5th Cir. 2006) (citing *Farguson v. MBank Houston, NA.*, 808 F.2d 358, 359 (5th Cir. 1986)).   Parties proceeding *pro se* are still required to provide sufficient facts in support of their claims; mere conclusory allegations are insufficient. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (citations omitted).

In this case, Muhammad maintains "the gravamen" of his complaint is Defendants have "denied him the right to freely practice his religion . . ." by denying him a particularized kosher diet—when, by his own admission, Defendants already provide prisoners at the EPCJA with kosher meals—albeit kosher meals that apparently do not meet Muhammad's standards.   *See* Pl.'s Compl., ECF No. 1-5, pp. 22–23(El Paso County . . . implement[ed] . . . the policy . . . of 'El Paso Texas, kosher menu' . . .").   Hence, Muhammad is not entitled to relief under RLUIPA because Defendants can demonstrate a compelling interest in refusing to provide an individualized diet to

Muhammad in particular, and its policy of denying individualized meals to prisoners in general may be the least restrictive means of achieving its penological interest in the effective functioning of EPCJ. Moreover, the Fifth Circuit has consistently held that prison officials "need not respond to particularized religious dietary requests to comply with the First Amendment." *Baranowski*, 486 F.3d at 122. Thus, Muhammad's complaint lacks an arguable basis in either law or fact. His complaint it is subject to summary dismissal under 28 U.S.C. § 1915A.

## CONCLUSION AND ORDERS

Accordingly, for the reasons outlined above, the Court enters the following orders:

**IT IS ORDERED** that Muhammad's request for a temporary restraining order or preliminary injunction is **DENIED**.

**IT IS FURTHER ORDERED** that Muhammad's complaint is **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim upon which relief may be granted.

**IT IS ALSO ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Muhammad be **ADVISED** that this dismissal counts as a "**STRIKE**" pursuant to 28 U.S.C. § 1915.[1] The Clerk will therefore provide a copy of this order to the Operations Department for the Western District of Texas. The Court **ADVISES** Muhammad that should he accumulate three strikes, he may be denied in forma pauperis status, and required to pay the full filing fee, when filing additional civil actions or appeals, unless he

---

[1] *See* 28 U.S.C. § 1915(g) (2012) ("In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.").

demonstrates that he is in imminent danger of serious physical injury.[2]

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SIGNED this 13th day of March, 2020.**

KATHLEEN CARDONE
**UNITED STATES DISTRICT JUDGE**

---

[2] *See id.*